Case number 20-1130, Eastern Missouri, David G. Waltrip v. Ruby Sawyers. Your Honor. Give me a moment to get you pinned here. Thank you. And there's opposing counsel. All right. I think I'm ready now. Everyone else is. Ms. Redden-Jansen, you have the floor. Good morning, Your Honors. If it may please the Court, my name is Angela Redden-Jansen, and I represent Mr. Waltrip. This matter arises out of the Bankruptcy Court's lien avoidance of Mr. Waltrip's judgment lien. I don't think that there's any dispute between the parties on the applicable standard for avoiding the lien and that the Colich formula would be the applicable formula to determine whether or not the lien was avoidable and to the extent at which the lien was avoidable. The issue here is prior to Ms. Sawyers filing bankruptcy, her house burned. There was a substantial fire loss. There were insurance proceeds. Those proceeds had been fully adjusted by the time the case was filed, and they were being sold. Judge Loken, if the record shows, when did Mr. Waltrip first learn of the insurance proceeds? The record does not reflect when Mr. Waltrip first learned of the insurance proceeds, Your Honor, but he appeared at the 341 meeting of creditors. That's in the record. The insurance proceeds were discussed at the 341 meeting of creditors, so at least at that point, he was aware there were insurance proceeds to repair the home. So this is a preposition fire. Detter reopened her case to avoid a lien. To determine the extent to which Ms. Sawyers' homestead exemption is impaired, we have to properly define the homestead. In this case, Waltrip believes that the homestead is defined by more than just the home. It's everything, and in fact, under Missouri statute, it is defined by the home, the land, the rents, the issues, and the products thereof. And under that definition, that would clearly include the insurance proceeds. They existed on the day of filing. They were earmarked. Let me ask you this, because I'm somewhat familiar with bankruptcy, but not as much as you need to be. If your argument is correct, then were the proceeds an asset of the estate? Yes. Under 541, they absolutely were an asset of the estate. Is there any authority for that? 11 U.S.C. section 541, Your Honor, I believe, if I'm not mistaken. I meant judicial authority, considering the ‑‑ I understand the issue of when proceeds ‑‑ whether, you know, proceeds being considered part of an asset, whether it's homestead or not, but has that ever been translated into a contested case and ruling by a bankruptcy court that that means they're an asset of the estate? Your Honor, I believe I cited to ‑‑ well, I cited to several cases, Your Honor, and I believe many of those had insurance proceeds that were involved. I think In re Mater, they all had insurance proceeds. They weren't exactly on point to the case at bar, but there have been cases that have litigated whether or not insurance proceeds are exempt for purposes of the homestead exemption. So there are cases in ‑‑ there are numerous cases that say insurance proceeds for purposes of claiming the homestead exemption and exempting those out represent the homestead. They are exemptable by the homestead exemption, Your Honor. They take the place of. And that's ‑‑ and part of the argument here, Your Honor, is that if you can exempt insurance proceeds as if they were the homestead, then they must also be included in the value of the homestead under 522F because you are applying the homestead for purposes of determining whether or not your exemption is impaired. So if you can use ‑‑ if you can exempt the homestead ‑‑ if you can exempt the insurance proceeds as your homestead by applying the homestead exemption, well, the exemption you're using to determine whether or not the lien can be avoided, the exemption that's impaired for lien avoidance purposes is, in fact, the homestead exemption. And so ‑‑ Counsel, was this raised in your opening brief or was this only in your reply brief? I don't recall. I've raised this issue repeatedly, Your Honors, at the lower court and here. But my question is, was it raised in the opening brief? I believe so, Your Honor. All along we've said the insurance ‑‑ that there's an incongruity in this decision. That's my entire argument, that the decision with the bankruptcy court, is incongruous with the other parts of the bankruptcy case law. If you're going to allow me to exempt these same insurance proceeds as if they were the homestead, right, but say they're not to be considered for purposes of valuing the homestead for lien avoidance purposes, that doesn't make any sense. It's exactly the same piece of property, the home, and exactly the same exemption. Let me follow on procedurally, because I'm kind of a procedure‑focused person. Did you, in responding to the motion to reopen, did you urge, I don't know if you were the attorney at the time, but did Mr. Walsh urge that if it's reopened, there has to be reopened the fact that the debtor initially failed to disclose a very important asset of the estate? This asset was always disclosed. The debtor scheduled the existence of the insurance. The proceeds were not scheduled as an asset. They were not scheduled as an asset. That's what I'm saying. Would the trustee have abandoned the case if the proceeds, if your argument is correct, and the proceeds were part of the estate and the debtor failed to treat them that way, we don't know whether the trustee would have abandoned. The assets were known to the bankruptcy court. The insurance proceeds, while not properly disclosed on the schedule by debtor's counsel, were, in fact, in the schedules. They were on the SOFA. But the $132,000 was not included in the valuation of the estate, right? That is correct, Your Honor. Did you argue that if you reopen, that has to be reopened? I did not, Your Honor. That argument was not made by me. The argument that was made by me, Your Honor, was that in a roundabout way, yes, that argument was made. Well, a roundabout doesn't work. Well, my— Much of what you're arguing now, I think, was foreclosed by permitting the—or at least not objecting when the bankruptcy judge explicitly said, I am reopening only for the purpose of attacking—permitting an attack on Mr. Waldrop's lien. That was—that shouldn't have been the only issue. Again, Your Honor, I'm not sure that's an accurate characterization because all along we have said that— I read his order. I came pretty close to quoting his order. Your Honor, I was not— If you allowed it to be reopened without objection on that limited basis, and of course you could have gone to the BAP or the district court immediately on that issue, so then everything that happened afterward is, put another comment, a self-inflicted wound, so to speak. Your Honor, what I'm trying to make my point here is that the bankruptcy— I understand your point, and we've argued all along that Ms. Sawyer should not be allowed to— I would—the case was already reopened when I entered, so let's be that. I'm bound by what was there when I got there, okay? So when the case was reopened and I filed a response, my response to the motion to avoid lien was that the debtor should not get the benefit of not having either— because we complained about the fact that the lien was not avoided as a preference or avoided under 522 at the time of the filing, and that the debtor shouldn't get the benefit now, okay, of keeping all those insurance proceeds and having no equity in the house. Because at the time, the trustee was aware of the fact that there was a fire, and the trustee chose not to administer on the asset for whatever purpose, but what we're getting to here is not whether or not she could reopen it for purposes of avoiding lien, but how to value the thing. And my argument is the thing is more than just the home as it existed on the day of filing. The as-is condition of the home you live in, the homestead, is more than the home. Let me ask you—I understand all that, but we're not talking about, you know, sort of the real world, so to speak. But a question I want to ask both you and opposing counsel. If we affirm, what happens next? Ms. Sawyers gets to keep the house free and clear of mock crime. Wait, wait, wait, wait, wait, wait. There's an executed sheriff's sale. In Missouri, the sheriff's deed is not affected to transfer title until delivery, which was also made clear at the lower level. Wait, wait, wait, wait. Why are you assuming—do we—so you're admitting that she gets the house if we affirm? Or is that going to be your next battlefield, which I assume it would be? That the effect of—that this valuation decision does not affect the validity of the sheriff's sale? That may actually be accurate, Your Honor. We have other arguments that can be made. Well, I want—you know, are you saying I'm not going to argue that, or are you saying I will? I'm saying— It certainly affects the fairness of the BAP refusing to even look at this issue. Your Honor, under Missouri law, the deed was never delivered to my client, okay? Under Missouri law, the deed is not effective or doesn't effectuate the sheriff's execution until such time as it is delivered to my client. You're just—you're intentionally not—well, maybe not intentionally. The question will be, does the sheriff still have a duty to deliver the deed to the highest bidder? I don't believe that the sheriff does, Your Honor, because once my lien is avoided, then the sale—the sheriff's not going to effectuate the sale. Once my client's lien is avoided, the sheriff can't effectuate the sale. Wait, wait, wait. The consideration has been paid. Admittedly, it was a paper payment. No. But the fact that he reduced the lien—he reduced—in other words, the lien that was avoided was less than—it was reduced by his payment to the sheriff. That'll be your argument. And don't—don't tell me that's foreclosed under Missouri law unless—unless you researched it and know what it is. As we sit here today, my earnest belief is I will be foreclosed from collaterally attacking that sheriff's sale—or collaterally attacking the failure to deliver the deed. It's not a collateral attack, counsel. It's not a collateral attack. The sheriff's sale is incomplete at this point, right? It is incomplete. I believe that the— The question is—the question is how does the sheriff compete—complete it? Does he abrogate the sale or does he go ahead and complete it? There is no sale until the deed is delivered. I don't believe the deed will ever be delivered. There is, in fact, a state court matter where this has been stayed. The delivery of the deed has been stayed until— We weren't told—we weren't told about that, were we? No, we were not, Your Honor. It is not part of the record, but, again, I did not believe that it was— It was being taken judicial notice of a pending case. There is a state court case. There is a pending case. The sheriff cannot deliver the deed until after such time as this matter has been ruled on, and I don't believe that the deed will be delivered. And I'd like to reserve the rest of my time for rebuttal, if possible, Your Honors. Thank you. Mr. Eggman, I will start. I'd like you to start where I just left off, opposing counsel. What's next? Good morning, Your Honor. Rob Eggman. I'm with the law firm of Carmy McDonald, P.C., representing Neapoli, Ruby Jean Sawyers, and I'd be delighted to pick up where you left off. I believe that Ms. Redden-Jansen and I exhaustively researched this issue prior to litigating this case before the bankruptcy court. It is my foregone conclusion that the sale will be void ab initio as a result of the avoidance of this lien. There was no lien to execute upon by the sheriff based upon the retroactive nature of the bankruptcy court's order avoiding this lien in its entirety. I thought that's what you'd say. And now was that disclosed to the bat? The issue did not come up in the bat, Your Honor. Did anyone affirmatively disclose that if you just say we're not going to be bothered with this, that the result will be that the debtor gets what is truly a windfall as opposed to simply a larger lien avoidance? It was discussed before the bat in the nature of what the results of affirming the case will be. All right. Where do I look to see that that was discussed with the bat? A, during oral argument it was discussed, and B, in connection with the windfall argument made by Waltrip LLC in their principal brief before the bat and before the A circuit. Counsel, would you address why this is not a windfall in your mind? I'd be happy to, Your Honor. First off, it's going to force me a bit to go a tad out of the out of the record before the court. Ms. Red Jansen is absolutely correct. The the proceeds of the insurance policy were not listed on the schedule B of the bankruptcy schedules. I was not counsel of record for the bankruptcy. I came in a bit later when I saw what was happening here in the state court. But it was disclosed in the statement of financial affairs. Disclosure, disclosure, disclosure of the three rules when you're putting together bankruptcy schedules. And I would say that Miss Sawyer's failed in the first disclosure. But in the second disclosure, she was successful because the the insurance proceeds were discussed at her three forty one meeting. In fact, the bankruptcy trustee held this case open for a period of time, about 60 days after the three forty one meeting, presumably in order to determine what to do about these insurance proceeds. I myself have been a bankruptcy trustee for about 16 years now. And judging from my own experience, the bankruptcy trustee really had two options to look at here or three, I guess. Option number one, bankruptcy trustee stands in the shoes of the debtor, takes the insurance proceeds, rebuilds the home and sells it. Bankruptcy trustees don't like to do that. We don't like to be general contractors. We like to be litigators and folks who sell assets. General contracting is not something bankruptcy trustees enjoy. Option number two, abandon her interest in the home as it was destroyed by fire and attempt to execute solely upon the proceeds of the insurance policy themselves. Itself, that was not done here. I can't tell you why it was not done here. I believe that there is a stipulation of fact that the BAP, by the way, agreed with or disagreed with during oral argument. The stipulation of fact was that the insurance policy required those funds to be used in connection with the rebuilding of the residents. And option number three, which is what the trustee chose, is to say this is an absolute mess. I don't want any part of it and I'm going to abandon my interest in all of the assets of the bankruptcy estate. And that is exactly what the bankruptcy trustee did in this case. And I also want to point out the bankruptcy trustee is a seasoned bankruptcy trustee. She's been a bankruptcy trustee for about 20 years. This is not her first walk around the block when it comes to a bankruptcy case. So I trust the bankruptcy trustees judgment in not rebuilding the home and not executing upon these or should say administering upon these insurance proceeds. Your Honor, what this also gets back to in terms of the windfall, and I'm going to start by by talking about the judgment itself. The judgment was entered into pursuant to a consent judgment just about four years ago. It was January 12, 2017, a very large judgment. The bankruptcy case was filed about 30 days after that. The judgment creditor here, Walter of LLC, had certainly plenty of time to investigate the home and find that it was in complete disrepair due to a fire and take post judgment discovery to determine if there was any insurance proceeds. And then third, possibly execute a garnishment upon those insurance proceeds. That did not happen. There is no question here that there was no lien upon. Counselor, you're taking it contemporaneous with the bank resolution of the bankruptcy case. Now we're talking about reopening and retroactively changing the world. And if it's reopened and the ruling is that the insurance proceeds were part of the homestead for bankruptcy estate purposes, then the estate had $132,000 in assets that debtor didn't conceal but didn't put where they belong. And why can the courts just ignore that in deciding whether there was a windfall? Because that's not before the court right now as to what will happen. Your Honor is correct. In theory, Ms. Brown could now four years later attempt to reopen this case. I would object. I would obtain a copy of the 341 meeting transcript and say a bankruptcy trustee cannot reopen a case to administer minister upon an asset that that trustee was aware of existence, whether it be orally through testimony. I'm questioning the bankruptcy courts and the best reasoning on this. You know, sir, there's no authority that this was a windfall. There's no authority about, you know, blah, blah. When what they're doing is retroactively creating a sit with a situation that was not part of the closing, closing of the estate without reopening, only reopening the status in so as to take away a lien. I respectfully disagree, Your Honor. I think that was an abusive. I apologize. Please proceed. That strikes me as an abuse of discretion. Yeah, does not strike me at all as an abuse. If you're going to reopen, reopen the thing and do it right the second time. Don't just add one error. You know, just don't just correct half of the problem. Your Honor is too late. It was too late. You can't on abandon an asset of what you're aware of when you're a bankruptcy trustee. You can you can reopen about the court. I'm not talking about the trustee. I'm talking about the court. But that's who we're reviewing. The court will not set aside an abandonment, a general abandonment, if it was done so with knowledge of the asset. So, for example, when I'm a bankruptcy trustee. Then fine, then then then don't reopen. But you're not. If you can't unscramble the egg, don't just. Take the yoke and run, so to speak. I think what you're questioning here is you're questioning the bankruptcy trustee's judgment. And you have a right to do that. No, no, no, no, no. I am questioning the court. And you don't want to listen to that. You don't want to go there. Your Honor, I do. We're reviewing the courts. Well, the court routinely bankruptcy courts throughout the nation routinely open bankruptcy, reopen bankruptcy cases for the sole purposes of conducting lien avoidance. In Ray Hall, that case was two years old. It's not uncommon at all. That's fine. But this is a this is a this is an equitable regime. And we're here to see, make sure that the bankruptcy courts, the courts below did equity. With all due respect to the court, Your Honor, I think you are here to see whether the court ruled correctly on a very specific issue. And that is, how do you value a piece of real estate for purposes of 522 F? And the appellate, the appellant is asking you for this court to legislate, legislate from the bench. They'd like to look at legislate from the bench. Come on. That's exactly what's happening there. There's no there's no authority for for treating proceeds as part of a real property when when the proceeds are dedicated to its improvement. Not in the not in connection with the valuation of a piece of real estate for 522 F. There is not one case to support that position. You know, there's always there's always a first time. And that's what the court is asking. That's what is being asked to do. But if you look at the wealth of case law, we have we have cited, you know, starting with with the formula going down to Armstrong versus Harris, which is a case out of this court, which states that value must be determined as a petition date. Value means fair market. I saw was that your brief spent pages and pages trying to distinguish the cases cited by opposing counsel because I didn't see any reference. I didn't see any reference to a decision that had affirmatively decided this valuation question your way. Absolutely. We have the valuation question is how do you value a piece of real estate? Do you value that real estate as the petition date? And that's what our case law says. You do you value it as the petition date as is, whereas I want to point out something else in terms of a windfall to the court. Please keep in mind that pursuant to the joint stipulation of fact, the fire took place before the judgment. Waltrip LLC is receiving exactly what they had when they received their judgment. And that is a judgment lien on a piece of real estate worth worth at most six thousand dollars due to a full and complete fire damage. So if there's a windfall in this case, you're asking for the windfall to be put in the hands of of Waltrip LLC. If you decide to magically give him as additional collateral, the insurance proceeds. That is where the windfall comes. The court can take judicial notice of the bankruptcy schedules that were filed, and I can tell by obviously the oral argument that the court has reviewed them very carefully. Miss Sawyers is a waitress at Denny's making twenty nine hundred dollars per month. She lists unsecured claims totaling in excess of five hundred thousand dollars. But if the court digs a little deeper, you'll note that the claim of Waltrip LLC is listed twice and the approximate amount of two hundred fifty thousand dollars each particular time. So the reality is, is that ninety eight percent of the claims in this bankruptcy state belong to Waltrip. And I think that one can assume that that was the driving force behind behind Miss Sawyer's having filed this bankruptcy case. There is no question. Were they business legal services? No, Your Honor, they were legal services not even rendered to Miss Sawyers. They were rendered to Miss Sawyer's grandson in connection with a child custody case. Miss Sawyer's was the guarantor. Once again, I brought up a couple of cases which discuss how you value the the property as a petition date. And I thought I would read read just just real quickly discussing the valuation date when it comes to petition day versus any date subsequent to that time where there could be a enhancement value. And it says the court says it seems equally appropriate to use that date mean the petition date for determining the value of property claimed as exempt and the implication for certain lien holders of allowing that exemption. And that's exactly what we have here. Your Honor, we have our we have a situation where where the court in reopening the case and the court in avoiding this lien have put the creditors back essentially in the same place they were on the petition date. Mr. Waltrip has a lien on a six thousand dollar piece of real estate. And Miss Sawyer's has an insurance claim. Mr. Waltrip or that is Waltrip LLC has never argued that they have a claim to the insurance proceeds and have never attempted to execute upon those insurance proceeds. The case is cited by the appellant here discussing the insurance proceeds being a substitute really have nothing to do with valuation. They had to do typically with contract claims, which is most this case is most certainly not a contract claim case. In addition, the material case, which is relied heavily upon them, has to do with the disclosure issue and whether those can still be claimed as exempt when there is no disclosure. Getting to the issue of windfall, the only the only case cited in connection with the windfall argument is a case where a debtor seemed to time their filing in order to avoid paying rent. And that's not what we have here. We do not have an inadvertence timing here due to failure to pay rent. And finally, there was no delay in exercising their rights that have been prejudicial to Waltrip LLC. The value in the property has gone up since the petition date rather than down. And he's put right back in position. He should have been and would have been had this motion been timely filed. And I do see my time is up. And if the court has any questions, I'm certainly willing to entertain them. Thank you. Thank you. See a couple minutes for a rebuttal. Yes, your honor. Can you hear me, your honors? Yes. I think it's notable to point out that on the day of filing there, there would have been no equity in the property in and of itself. If my assertion that the insurance proceeds are the homestead or constitute part of the homestead because of my client's lien. And now the court has allowed the debtor to avoid my client's lien. But now the trustee can't. And in the same hand, the trustee isn't able to administer upon it. The debtor gets to keep all of that equity and not having had to have paid any of her unsecured creditors. She gets bankruptcies to give a debtor a fresh start, not a head start. And this debtor definitely got a head start. She has a house that is valued at one hundred and ten thousand dollars or whatever it's valued at today. And my client's sole argument is the homestead was the same value on the day of filing because the insurance proceeds constituted the value in the property. They were the property. They were the substitute. They were the alternative. They were the property. And to say anything different is contrary to other cases that allow the debtor to exempt those proceeds as if they were the homestead. So what's essential in this case is determining what comprise the homestead on the day of filing. We aren't arguing that the value of the homestead on the day of filing isn't the fair market value. Can I ask a question? I mean, what is what is the case in Missouri that that so holds that the insurance proceeds are part of the homestead? Or I don't want to mischaracterize the argument you just made. But what is the Missouri case? Because I think this is a question of state law, isn't it? It is. And there are several lines of cases in Missouri. OK, one of them being skelton, a skelly oil that say in a contract sense, the the insurance proceeds represent the substitute for a replacement for the thing being sold. OK, so in that concept, in that particular. Limited in that scope, Missouri represents or or accepts that insurance proceeds are a substitute for the collateral or for the for the property in a contract, in a contract setting. Correct. There's also. So are you asking us to extend that to the specific facts? Do you agree it's an extension beyond at least something of an extension beyond current case law? What you're asking us to do? I don't think so. Under the definition of homestead, as made by the state of Missouri, which says it includes the products and issues there from. And there's no dispute that the insurance proceeds are products there from. We also have case from the bankruptcy court, your honors, that say when the debtors house burns down or the house is sold during bankruptcy, those proceeds from either the sale or from the insurance represent the homestead. And I've cited to those in my brief. We also have. OK, I think you've answered my question, so thank you. Thank you. I'm out of time. Unless anybody else has any questions. I appreciate your time this morning. Your honors. I can't hear the judge Loken. Thank you, counsel. The case has been thoroughly briefed and argued and argument to help clarify things for me to the extent we can do it this quickly. We'll take the case under advisement.